UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| F.D. STELLA PRODUCTS COMPANY, ) ) Plaintiff ) ) vs. ) ) GENERAL STAR INDEMNITY COMPANY, ) ) Defendants. ) ) | No. 03 C 5151 Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiff-insured, F.D. Stella Products Company ("Stella"), filed suit against Defendant-insurer, General Star Indemnity Company ("General Star"), for breach of an insurance contract. General Star filed a counterclaim for declaratory judgment. Diversity jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, Stella is a Michigan corporation with its principal place of business in Michigan, and General Star is a Connecticut corporation with its principal place of business in Connecticut. Venue is properly invoked pursuant to 28 U.S.C. § 1391, as a substantial portion of the events giving rise to this claim occurred in Lombard (DuPage County), Illinois.

Because the General Star insurance policy in question does not contain a choice of law provision, the court must look at the choice of law factors set forth by the Illinois Supreme Court in *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 665 N.E.2d 842, 845 (Ill. 1995). These factors require the court to consider (1) the location of the policy's subject matter; (2) the place of

the policy's delivery; (3) the domicile of the insured and insurer; (4) the place of the last act giving rise to a valid contract; (5) the location of performance; and (6) any other place bearing a rational relationship to the general contract. Because the policy's subject matter was at all relevant times located in Lombard, Illinois and because the General Star policy was underwritten and delivered in Illinois, the court holds that Illinois law should be applied to resolve this dispute.

Before the court are Stella's and General Star's cross-motions for summary judgment. For the reasons stated below, Stella's motion is denied and General Star's motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in the light most favorable to the non-moving party, as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). On cross-motions for summary judgment, the court must consider the merits of each motion and assess the burden of proof that each party would bear on an issue at trial. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## FACTS

### A. Background

Stella leases and refurbishes restaurant equipment. (General Star L.R. 56.1 ¶ 2). On or about March 11, 1997, Stella entered into an agreement with Ser-Ven Pizza, Inc. d/b/a Venditti's Ristorante to lease restaurant furniture, equipment, and fixtures ("the subject property"). (Stella L.R. 56.1 ¶ 7). Stella and Bancorp Group, Inc. ("Bancorp") financed a portion of the lease of the subject property, and, in return, both received a security interest in the property. (Stella Ex. D). Sometime prior to December of 1999, Ser-Ven Pizza ceased operating Venditti's Ristorante and left the subject property at the premises. (Stella L.R. 56.1 ¶ 8).

As of December 14, 1999, Chicago Pizza Kitchen occupied the restaurant space formerly used by Venditti's Ristorante and used the subject property in its restaurant operations with Stella's and Bancorp's knowledge.[1] (General Star L.R. 56.1 ¶ 10). Immediately thereafter, Stella sent documents related to the financing of the subject property to Sam Miceli, owner of Chicago Pizza Kitchen, but no agreement was reached regarding the lease, sale or use of the subject property. *Id.* at ¶ 11.

---

[1] Stella states in its Responses to General Star's Consolidated Local Rule 56.1(a)(3) Statement of Undisputed Facts that it lacks sufficient knowledge or information with which to admit or deny that Chicago Pizza Kitchen had commenced using the subject property in its restaurant operations as of December 14, 1999. (Stella's Resp. to General Star's L.R. 56.1 ¶ 10). In Stella's Answers to General Star Indemnity Company's First Set of Requests for Admissions, however, Stella admits that it did in fact know that Chicago Pizza Kitchen was conducting business using the subject property as of December 14, 1999. (Stella's Answers to General Star's First Set of Requests for Admissions ¶ 1). Consequently, the court deems this fact admitted.

At some point between December 1999 and March 2001, Jason and Anthony Brown ("the Browns") assumed ownership of Chicago Pizza Kitchen. *Id.* at ¶ 12. The Browns, like their predecessor, used the subject property in their restaurant operations with F.D. Stella's and Bancorp's knowledge but without any agreement between Chicago Pizza Kitchen and Bancorp or Stella for the lease, sale or use of the subject property.[2] *Id.*

On June 19, 2000, Bancorp filed a replevin suit against Chicago Pizza Kitchen, seeking, among other things, surrender of the subject property and an order 1) declaring that Bancorp had a superior right, title to, and interest in the property, 2) ordering that Chicago Pizza Kitchen relinquish possession of the subject property to Bancorp, and 3) empowering Bancorp to enter the premises where the subject property was located to take possession of it. *Id.* at ¶ 13. On November 15, 2000, the Court granted all of Bancorp's requests. *Id.* at ¶ 14.

Effective March 2001, Bancorp assigned all of its rights, title, and interest in the subject property to Stella. *Id.* at ¶ 15. On March 21, 2001, Stella sent its agent to the Chicago Pizza Kitchen premises to inventory the subject property. *Id.* at ¶ 16. On April 1, 2001, Stella's agent reported to Stella that a double deck pizza oven, espresso machine, vertical cutter mixer, slicer, under-the-counter cash drawer, range, and glass washer had been removed from the restaurant premises. *Id.* at ¶ 17; *see* (Stella Ex. I). Of the subject property, a fire protection system, shelving, refrigerators and freezers, a dish washer, fryers, booths, and tables remained at the premises. *Id.*

---

[2]Stella also states in its Responses to General Star's Consolidated Local Rule 56.1(a)(3) Statement of Undisputed Facts that it lacks sufficient information or knowledge with which to admit or deny that it knew that the Browns were using the subject property in their restaurant operations. (Stella's Resp. to General Star's L.R. 56.1 ¶ 12). Frank Stella admitted in his Examination Under Oath, however, that he believed the Browns were using the subject property. (Stella Exam. Under Oath at 41). Consequently, the court deems this fact admitted.

On or about April 16, 2001, Stella's attorney informed the Browns by letter of the outcome of the replevin suit and of Bancorp's assignment of all of its rights in the subject property to Stella. *Id.* at ¶ 19. In the same letter, Stella advised the Browns of its intention to remove the subject property from the restaurant immediately unless adequate financial arrangements were promptly made and Stella also informed the Browns that any prior sale or transfer of the subject property without authorization from Bancorp or Stella was fraudulent. *Id.* Between April 2001 and August 2001, Stella attempted to negotiate with the Browns regarding the lease or purchase of the subject property. *Id.* (Stella L.R. 56.1 ¶ 16). Throughout this period, the subject property remained in the Browns' custody at the Chicago Pizza Kitchen. *Id.* at ¶ 21.

On August 8, 2001, Stella was notified that the Browns had vacated the property without leaving a forwarding address and removed all of the subject property from the restaurant premises. *Id.* at ¶ 22. Subsequently, Stella filed a police report on September 4, 2001 concerning the alleged loss or theft of the subject property. *Id.* at ¶ 22; (Stella Ex. K).

Thereafter, on or about August 21, 2001, Stella submitted a claim for coverage of the alleged theft of the subject property from the restaurant premises to General Star. *Id.* at ¶ 24. (Stella Ex. L). General Star denied coverage for Stella's claim on October 22, 2002, because:

> ...loss or damage resulting from a criminal act by anyone to whom you entrust property, voluntary parting with any property if induced so by a fraudulent scheme, trick or false pretense, and loss or damage where the only evidence of loss is determined upon taking inventory or any other instance where there is no physical evidence to show what happened to the property, are all causes of loss that are specifically excluded under your policy.

*Id.* at ¶ 28. (Stella Ex. M. at 3-4).

5

**B.     The General Star Policy**

General Star issued a commercial property insurance policy to Stella with a policy coverage period of December 31, 2000 to December 31, 2001. (Stella Ex. B at 1). The policy stated, in part, "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Stella Ex. B at 9). The policy defined "Covered Causes of Loss" as "RISK OF DIRECT PHYSICAL LOSS unless the loss is…Excluded in Section B., Exclusions; or…Limited in Section C., Limitations…" (Stella Ex. B at 20). Section B, Exclusions, stated, in part,

> 2.  We will not pay for loss or damage caused by or resulting from any of the following:
>
>     h.  Dishonest or criminal act by you, any of your partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
>
>         (1) Acting in collusion with others; or
>         (2) Whether or not occurring during the hours of employment
>
>         This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.
>
>     i.  Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(Stella Ex. B at 21-22). Section C, Limitations, stated, in part,

> We will not pay for loss or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described in this section.
>
> e.  Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other

> instances where there is no physical evidence to show what happened to the property.

(Stella Ex. B at 23-24).

### C.  The Present Action

Stella filed this action against General Star on July 24, 2003, alleging that General Star breached its contract with Stella when it denied Stella's policy claim for theft of the subject property. On August 27, 2004, General Star filed a counterclaim for declaratory judgment, requesting that the court determine whether any coverage obligation exists between General Star and Stella and alleging that the General Star policy did not cover Stella's claimed loss of the subject property because it fell within one or more of the policy's exclusions and/or limitations. Specifically, General Star claimed that Stella's loss was excluded from the policy's coverage because Stella "entrusted" the property to the Browns; Stella was induced to voluntarily part with the property by a "fraudulent scheme, trick or false pretense;" and, alternatively, to the extent that there is insufficient proof of theft and Stella's claim is one for an "unexplained loss," the subject property "mysteriously disappeared." On May 12, 2005, Stella filed for partial summary judgment, arguing that General Star's policy exclusions and limitations were inapplicable to the loss at hand because the subject property was not entrusted to the Browns, Stella did not voluntarily part with the subject property due to a "fraudulent scheme, trick, device or false pretense," and the disappearance of the subject property did not fall within the policy's "mysterious disappearance" exclusion. On August 3, 2005, General Star filed a cross-motion for summary judgment, arguing that General Star does not have any coverage obligations to Stella because Stella's loss of the subject property fell within one or more of the General Star policy's exclusions.

## DISCUSSION

### I. "Entrustment Exclusion" Defined.

In support of its motion for summary judgment, General Star argues that the "entrustment exclusion" precludes Stella from being compensated under the General Star policy for the alleged theft of the subject property. Stella counters that this exclusion does not apply as a matter of law because it did not "entrust" the property to the Browns.

According to the policy, General Star will not pay for loss or damage caused by or resulting from a "[d]ishonest or criminal act by you, any of your partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose." (Stella Ex. B at 21-22). Because the General Star policy does not define "entrust," the court must apply established rules of contract construction and give this term its common and ordinary meaning. *See Prudential Ins. Co. of America v. Miller Brewing Co.*, 789 F.2d 1269, 1275 (7th Cir. 1986). The common and ordinary meaning of "entrust," as found in Webster's Third New International Dictionary, is:

1. to confer trust upon; deliver something to (another) in trust.

2. to commit or surrender to another with a certain confidence regarding his care, use or disposal of.

Webster's Third Int'l Dictionary 759 (1993); *see also* Deluxe Black's Law Dictionary 533 (6th ed. 1991) (defining "entrust" as "[t]o give over to another something after a relation of confidence has been established. To deliver to another something in trust or to commit something to another with a certain confidence regarding his care, use or disposal of it.").

The parties do not cite to and the court was unable to locate an Illinois case explicitly defining or interpreting the term "entrust" used by the General Star policy. Other jurisdictions interpreting similar "entrustment exclusions," however, have found that "[w]hen the word entrusted appears in the contract the parties must be deemed to have entertained the idea of a surrender or delivery or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient." *Nat'l American Ins. Co. v. Columbia Packing Co., Inc.*, 2003 WL 21516586*4 (N.D. Tex. 2003). *See also Balogh v. Pennsylvania Millers Mut. Fire Ins. Co.*, 307 F.2d 894, 896 (5th Cir. 1962); *Abrams v. Great American Ins. Co.*, 199 N.E. 15, 16 (N.Y. 1935). Consistent with these authorities, the court adopts the Webster's definition of "entrust."

## II. Stella's Conduct.

With that definition in mind, it appears beyond question that Stella "entrusted" the subject property to the Browns when it knowingly permitted the Browns to maintain custody and control over the subject property for nearly five months while the parties attempted to negotiate a purchase or lease agreement for the subject property.

As of November 15, 2000, Bancorp had obtained a court order empowering Bancorp to enter the premises of the Chicago Pizza Kitchen and to retake possession of the subject property. Effective March 2001, Stella similarly possessed an undisputed right to the subject property and the authority to retake possession because Bancorp had assigned to Stella all of its rights, title, and interest in the subject property. Yet, Stella elected to leave the subject property in the custody and control of the Browns. Despite knowing that certain items were missing and

warning the Browns that it intended to immediately retake possession of the remaining subject property and that any prior sale or transfer of the subject property was fraudulent.

Frank Stella testified that Stella did not retrieve the subject property from the restaurant premises when the Chicago Pizza Kitchen changed ownership because he viewed the Browns as a good faith prospective purchaser/lessee of the subject property, and Stella had wanted to establish good will with the Browns in hopes of consummating a lease or purchase agreement. *See* Stella Exam. Under Oath Trans., pp. 25-27, 30-31, 34-36, 40-42, 56-57; *see also* Stella Dep. Trans., pp. 12-16. Frank Stella further testified that he knew the Browns were using the subject property in the operation of their restaurant and that he intended for them to do so because he believed that it would persuade the Browns to ultimately lease or purchase the subject property. *Id.* Stella thus placed its confidence in the Browns not to damage, steal or otherwise dispose of the subject property.

As General Star notes, other courts have found that an "entrustment exclusion" barred coverage where an insured voluntarily transferred or surrendered possession of insured property to a prospective purchaser who then absconded with the property. *See Balogh v. Pennsylvania Millers Mut. Fire Ins. Co.*, 307 F.2d 894, 896 (5th Cir. 1962) (finding that an "entrustment exclusion" barred coverage where the insured entrusted an emerald to someone who then entrusted it to a third party and the third party absconded); *Abrams v. Great American Ins. Co.*, 269 N.Y. 90, 92, 199 N.E. 15, 16 (N.Y. 1935) (holding that a jeweler entrusted insured property when he turned property over to a third party in an attempt to effectuate a sale); *Pacific Indemnity Co. v. Harrison*, 277 S.W.2d 256 (Tex. Civ. App. 1955) (on rehearing) (finding that an insured automobile dealership had entrusted an automobile when it allowed a purported buyer to test

drive the vehicle and the vehicle was never returned). These cases are consistent with the purpose of an "entrustment exclusion," which is "to exclude from the risk undertaken by the insurer those losses that arise from the 'misplaced confidence' of the insured in those to whom it entrusts its property." *Bainbridge, Inc. v. Calfarm* Ins. Co., 2004 WL 2650892*6 (Cal. App. Ct. 2004) (citing *Van Sumner, Inc. v. Pa. Nat. Mut. Cas. Ins.*, 329 S.E.2d 701, 704 (N.C. App. Ct. 1985).

Stella argues that the absence of a written contractual agreement between the parties demonstrates that Stella and the Browns did not have the necessary relationship of trust or confidence. While a written contractual agreement would show that an entrustment had occurred, parties need not comply with the formal requirements of a contract to manifest a relationship of trust or confidence. Indeed, courts have held that "entrustment exclusions" operate even where the insured had no contractual relationship with the recipient of the subject property. *See Abrams*, 199 N.E. at 16 (N.Y. 1935) (insured "entrusted" $15,000 in jewelry when he surrendered the insured property based only on the recipient's previously demonstrated creditworthiness and her supposed integrity); *see also Pacific Indemnity Co.*, 277 S.W.2d 256 (insured "entrusted" an automobile when he surrendered the vehicle based on the recipient's execution of a tax affidavit and application for Texas Certificate of Title). The determinative factor as to the existence of an entrustment is simply whether the insured surrendered or transferred the subject property with confidence regarding its care, use or disposal. In this case, Stella knowingly permitted the Browns to possess and use the subject property in the operation of their business for nearly five months.

Stella further suggests that an entrustment of the subject property did not occur because the Browns did not receive the subject property directly from Stella but instead inherited it when the prior restaurant venture went out of business. The manner in which the Browns initially took possession of the subject property would be relevant if the Browns stole the property immediately or soon after inheriting the property from the previous owners. Stella, however, cultivated a relationship with the Browns during five months of negotiations. Throughout that period, Stella permitted the Browns to use the subject property in an effort to avoid the expense of removing the property from the premises and to induce the Browns to enter into a purchase/lease agreement. By failing to exercise its authority to retake possession, Stella's conduct implicitly sanctioned the previous owner's transfer of the subject property to the Browns and the Brown's continued possession of the subject property.

### III. Theft of the Subject Property by the Browns.

Finally, Stella argues that even if a relationship of confidence had been established during the five months of negotiations, that relationship had terminated by the time of its loss because Stella had intended to retake possession of the subject property two weeks after it was stolen. The "entrustment exclusion," however, applies even if the dishonest or criminal act occurs after the entrustment has terminated. *Bainbridge, Inc.*, 2004 WL 2650892 * 6; *see also Plaza 61*, 446 F.Supp. at 1171 (finding similar "entrustment exclusion" applicable even though property was stolen by general contractor after he had been terminated and ordered to leave the site). Since the parties' had established a relationship of confidence and the loss suffered by Stella was a direct result of that relationship, Stella's intent to terminate the relationship prior to the theft of the subject property fails to negate the "entrustment exclusion."

12

Having decided that Stella entrusted the subject property to the Browns, the only question that remains is whether the Browns actually committed a dishonest or criminal act that resulted in the subject loss. Or, more simply, did the Browns steal the subject property.[3] (Stella Ex. B. at 21-22) ("We will not pay for loss or damage caused by or resulting from any of the following...dishonest or criminal act by you, any of your partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose."). Both parties arguably leave open the possibility that the subject property mysteriously disappeared or was stolen by someone other than the Browns, but neither party seriously disputes that the Browns were responsible for the subject loss.[4]

Stella has maintained since it first learned of the subject loss that the Browns stole the subject property. On August 8, 2001, Peter Coules, the agent of the landlord of the restaurant premises, notified Stella that the Browns had vacated the premises and taken all of the subject property with them. Stella immediately filed a police report for theft with the DuPage County Sheriff's Office. While the police report does not specifically accuse the Browns of theft, it clearly contemplates that the Browns were responsible for the subject property's disappearance. Stella then formally accused the Browns of stealing the subject property when they submitted a

---

[3]The parties do not appear to believe that resolution of this issue is necessary to determine whether the "entrustment exclusion" applies. Both parties fail to specifically address whether the Browns committed dishonest or criminal acts resulting in the subject loss. But the "entrustment exclusion" applies only when the subject loss is the result of a dishonest or criminal act by a person to whom the insured entrusted the subject property. Thus, the applicability of the "entrustment exclusion" turns on whether the Browns stole the subject property.

[4]General Star argues in the alternative that the "mysterious disappearance" exclusion precludes Stella from recovering under the General Star policy. General Star explicitly states, however, that it raises the argument solely in the event that Stella cannot prove theft and Stella's claim is one for an unexplained loss. General Star's alternative reliance on the "mysterious disappearance" exclusion is thus not itself a basis on which to find a genuine issue of material fact as to whether Stella's loss resulted from a dishonest or criminal act committed by the Browns.

13

claim under the General Star insurance policy. (Stella Ex. K). The "Property Loss Notice," dated August 21, 2001, states that "Mr. Brown took all the equipment out of the restaurant." (Stella Ex. L). Stella now tempers its accusation but nevertheless makes clear that it still believes that the Browns stole the subject property:

> "[T]his Court may rest assured that the restaurant equipment did not get up and wander away. The equipment was of sufficient size where it could not simply be misplaced or lost. Moreover, there obviously would be no evidence of forced entry given the fact that the individuals most likely to have left with the restaurant equipment had keys to the space where it was last present." (Stella Mem. in Supp. at 11-12).

Not coincidentally, the evidence overwhelmingly demonstrates that the Browns took the subject property when they vacated the restaurant's premises. There was no evidence of forced entry at the restaurant to suggest that someone other than Browns took the subject property. The Browns were the last known party in possession of the subject property and the only party, aside from Stella, with access to it. In addition, the subject property disappeared at the same time the Browns vacated the restaurant's premises without notice and without leaving a forwarding address. Further, the Browns believed, however mistakenly, that they had already lawfully purchased the subject property from the restaurant's previous owners.

Thus, the evidence supports one conclusion: the Browns stole the subject property. There is simply no evidence in the record from which a jury could reasonably conclude that someone other than the Browns caused the subject loss, and "[s]peculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996). Accordingly, the "entrustment exclusion" in the General Star insurance policy bars Stella's recovery, since they entrusted the property to the Browns and the Browns' dishonest or criminal

act caused the subject loss. In light of this determination, it is unnecessary for the court to reach General Star's argument that two other exclusions apply.

## ORDER

For the reasons stated above, Stella's Motion for Partial Summary Judgment (#25) is denied and General Star's Cross-Motion for Summary Judgment (#35) is granted.

Date: December 12, 2005    Enter: *Joan H. Lefkow*

JOAN HUMPHREY LEFKOW
United States District Judge